UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AUSTIN COVINGTON,<br><br>             Plaintiff,<br><br>    v.<br><br>SAM WISE,<br><br>             Defendant. | CASE NO. 3:20-cv-06173-LK<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

## I.   INTRODUCTION

Plaintiff Austin Covington sued Dr. Sam Wise and his dental practice, German Wise Dental, LLC (collectively, "Defendants"), alleging, among other claims, that Dr. Wise willfully withheld his wages in violation of Section 49.52.050 of the Revised Code of Washington. Dkt. No. 1 at 21–22. Mr. Covington contended that Defendants failed to pay him $4,500 in bonuses that he was owed collectively for September, October, and November 2019, and for 10 hours of work on November 18, 2019. *Id.* at 22. He also averred that Defendants acted willfully and with intent to deprive him of wages, thereby entitling him to double damages. *Id.*

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

1        This case was initially slated for trial in April 2022. Dkt. No. 14. However, the Court struck the parties' pretrial submissions as well as the trial because those submissions violated the Local Civil Rules, the Court's chambers procedures, and the Court's scheduling order. *See generally* Dkt. No. 44; *see also* Dkt. No. 103 at 2. Amid the parties' efforts to file compliant pretrial submissions, Defendants' counsel moved to withdraw. Dkt. No. 58. Magistrate Judge J. Richard Creatura granted the motion, Dkt. No. 76, and shortly thereafter, German Wise Dental, LLC filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Western District of Washington. Dkt. Nos. 77–80. Pursuant to 11 U.S.C. § 362, all proceedings in the case against that entity were immediately stayed. That stay has not been lifted. The Court requested a joint status report from the parties regarding whether Mr. Covington wanted to proceed to trial with his claim against Dr. Wise, and Mr. Covington responded in the affirmative. Dkt. No. 82 at 2–3; Dkt. No. 83 at 1–2.

      Trial was then scheduled for February 21, 2023, and the parties agreed to a bench trial. Dkt. No. 84 at 1; Dkt. No. 87 at 1–2. Because Dr. Wise was proceeding pro se, the Court held several pretrial conferences with the parties starting in December 2022 to ensure that Dr. Wise understood the process and his obligations as a pro se litigant. Dkt. Nos. 86, 89, 104. Still, problems ensued. Dr. Wise violated the Court's scheduling order, Dkt. No. 92, by failing to file a proposed pretrial order by January 31, 2023. Dkt. No. 98 at 2. The Court issued a show cause order requiring him to either file a pretrial order or, to the extent he agreed with the proposed pretrial order submitted by Mr. Covington, to submit a signed signature page to that proposed order. *Id*. Dr. Wise did not do either and refused to cooperate with Mr. Covington to file the proposed pretrial order. *See* Dkt. No. 99 at 1–2; Dkt. No. 100; Dkt. No. 103 at 2–3. He also failed to file a trial brief. Dkt. No. 103 at 3. And both parties failed to file proposed findings of fact and conclusions of law by the February 7, 2023 deadline. Dkt. No. 92 at 2; Dkt. No. 103 at 3.

The Court imposed sanctions. Because both parties violated the Court's scheduling order by failing to file proposed findings of fact and conclusions of law by the deadline, even though the Court reminded them of that deadline during the December 15, 2022 status conference, the Court limited the trial to one day and a total of 3.25 hours of time per side to present arguments and testimony. Dkt. No. 103 at 5. Because Dr. Wise failed to cooperate in drafting the proposed pretrial order, failed to file a proposed pretrial order, and failed to remedy any of those deficiencies despite the Court's orders and warnings, the Court imposed the sanction that it previously warned Dr. Wise it would levy: the Court accepted the Plaintiff's Second Amended Pretrial Order as the pretrial order in this case, except (1) the Court deemed as stipulated the admissibility of all Plaintiff's exhibits listed on page 4 of the Second Amended Pretrial Order; and (2) the Court struck all witnesses listed as testifying on behalf of Defendant—other than Mr. Covington and Dr. Wise—on page 3 of the Second Amended Pretrial Order. *Id.* at 5–6; *see also* Dkt. No. 98 at 2–3. And as a sanction for Dr. Wise's "fail[ure] to file a trial brief or provide any explanation for that failure," the Court deemed Dr. Wise's affirmative defenses abandoned. Dkt. No. 103 at 6.

The parties then proceeded with a one-day virtual bench trial on Mr. Covington's willful withholding of wages claim. *See* Dkt. No. 111. At the start of the trial, Mr. Covington withdrew his claim for compensation for 10 hours of work on November 18, 2019. Trial Transcript ("Tr."), Dkt. No. 117 at 4–5. Mr. Covington also attempted to add a new claim for damages for his earned but unpaid time off, but the Court disallowed the claim because it was not in Mr. Covington's pretrial submissions or in the Court's signed Pretrial Order. *Id.* at 4; Dkt. No. 110 (pretrial order); *see also* Fed. R. Civ. P. 16(e) (a "court may modify the order issued after a final pretrial conference only to prevent manifest injustice."); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Mr. Covington did not move to amend the pretrial order or demonstrate

manifest injustice. Therefore, the trial focused solely on whether Dr. Wise wrongfully and/or willfully refused to pay Mr. Covington bonuses allegedly owed to him. Tr. 5.

Mr. Covington and Dr. Wise testified at trial; neither called additional witnesses. Dkt. Nos. 111–112. Mr. Covington submitted seven exhibits. See Dkt. No. 113 at 1 (Exs. 3–9); Dkt. No. 111 (minute entry listing exhibits admitted).[1] Dr. Wise submitted two exhibits, one of which the Court ruled inadmissible as hearsay. See Dkt. No. 113 at 1 (Ex. 519 refused; Ex. 534 admitted); Tr. 128–131.

At the conclusion of the trial, the Court informed the parties that they could file post-trial briefs and proposed findings of fact and conclusions of law within 30 days. Tr. 158. The parties timely did so. Dkt. Nos. 114, 118–120.

Having heard the testimony of the witnesses, considered the exhibits in evidence, and reviewed the post-trial briefs and proposed findings of fact and conclusions of law, the Court enters the following findings of fact and conclusions of law. See Fed. R. Civ. P. 52(a)(1).[2]

## II. FINDINGS OF FACT

1. Dr. Wise hired Mr. Covington to work as the Clinic Director of Operations at German Wise Dental, LLC d/b/a Lower Columbia Oral Health ("LCOH") starting on August 5, 2019. Dkt. No. 110 at 2; Tr. 25, 80; Ex. 6 at 4.

2. Mr. Covington had a written employment contract with Defendants. Tr. 13, 15, 140; Ex. 6 at 4. Mr. Covington drafted that contract. Tr. 25, 141.

---

[1] The Court admitted only pages 1–4 of Mr. Covington's Exhibit 4 because pages 5–9 were not in an authentic form. Tr. 28. Dr. Wise objected to the admission of the exhibit because he contended that he did not sign the document; the Court found that his objection to the exhibit was untimely. Id. at 31.

[2] To the extent any of the Court's findings of fact may be deemed conclusions of law, they shall also be considered conclusions of law. Similarly, to the extent any of the Court's conclusions of law may be deemed findings of fact, they shall also be considered findings of fact.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

3. Dr. Wise signed Mr. Covington's employment contract. Tr. 36–37, 40. His testimony that he did not sign the contract was not credible. Tr. 29, 140.[3]

4. The employment contract stated in relevant part as follows:

> I will agree to work with the starting wage of $4,000.00/monthly for the first 12 months of employment with an expected wage increase of $1,000.00/monthly on the 13th month while operating only one (1) clinic. Salary will be renegotiated once we obtain more than one (1) clinic.
>
> I will be issued a $1500.00 bonus in addition to the above agreed upon salary monthly to be paid in conjunction with the beginning of each month's paycheck starting 30 days after beginning employment date of August 5th, 2019.
>
> The bonus will be structured as a merit for continuing to make positive improvements to the clinic, employee retention, maintaining budgets, getting associate doctors, retaining attorney's for our lawsuits, saving cost on supplies, building relationships in the community and increasing production by increasing new patient's and lowering operational costs. I am committed to moving our clinic to a **specialty clinic** and holding ou[r] staff to higher standards, providing our patients with outstanding customer service, a higher level of service, professionalism, accountab[i]l[it]y and standard of care and reasonable cost for their treatment plans.

Ex. 6 at 4.

5. Consistent with this contract language, Dr. Wise told Mr. Covington that to earn the $1,500 monthly bonus, Mr. Covington had to fulfill certain performance criteria including "get[ting] him an attorney, . . . bring[ing] associate dentists in to help with the practice[,] . . . bring[ing] additional resources in, bring[ing] the clinic to the next level, operating level. . . . [and] help[ing] with the marketing, to increase the patient flow." Tr. 24. The criteria also included "improv[ing] the overall quality of the clinic" and "hav[ing] a positive and good rapport with the staff, on a zero schedule." *Id*.

---

[3] Dr. Wise disputed the authenticity of the written contract, Ex. 6, but the result in this case would not change even if that contract was not authentic.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

6. Mr. Covington understood the contract language providing that "[t]he bonus will be structured as a merit for" the listed criteria to mean that "once [he] complete[s], once [he] do[es] all of these, . . . that [he] would receive [his] money." *Id.* at 71–72; *see also id.* at 74; Dkt. No. 119 at 2.

7. Dr. Wise was responsible for the payment of wages to employees at LCOH, including Mr. Covington. Tr. 45, 116.

8. Defendants paid Mr. Covington $4,000 per month. *Id.* at 46, 140.

9. On September 22, 2019, Dr. Wise sent Mr. Covington a text message that stated the following: "This month you did great. I suggest [you] take $1000 bonus only if there is enough money after I take my pay for this month. . . . We have $30K today. If you collected $30K till the end of the month, I think it's gonna be enough. What do you think?" Ex. 534; *see also* Tr. 104–06, 108.

10. Mr. Covington responded to Dr. Wise's September 22, 2019 text with the following: "Ok that[] sounds good, thanks[.]" Ex. 534; *see also* Tr. 104–05.

11. Mr. Covington believed that the September 22, 2019 promise to pay $1,000 was Dr. Wise agreeing to pay a portion of the $1,500 monthly bonus he owed Mr. Covington for August 2019. Tr. 108–09.

12. No testimony or evidence at trial indicated that there were insufficient funds to allow Mr. Covington to take a $1,000 bonus.

13. Dr. Wise admitted at trial and in his pretrial and post-trial briefs that he promised Mr. Covington the $1,000 bonus. Dkt. No. 105 at 5 ("As shown in the text messages, one month prof. Wise told Mr. Covington that the production was good and he instructed him to take $1000 bonus for that month as Mr. Covington was the office manager and he was controlling the payroll

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

completely."); Dkt. No. 118 at 2 ("In exhibit 534, Mr. Covington accepted in text the bonus I suggested for that particular month[.]").

14. Mr. Covington was not paid any bonuses. Tr. 47, 118.

15. Mr. Covington's final day of employment with LCOH was November 17 or 18, 2019. *Id.* at 64.

## III.   CONCLUSIONS OF LAW

**1. Jurisdiction**

1.1. The Court has supplemental jurisdiction over Mr. Covington's state law wrongful wage withholding claim because it forms part of the same case or controversy as his federal employment-related claims, Dkt. No. 1 at 14–18 (asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2), and arises from the same period of employment and the same common nucleus of operative facts. 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003))).

1.2. Venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

**2. Washington's Wage Rebate Act**

2.1. Washington's Wage Rebate Act prohibits "[a]ny employer or officer, vice principal or agent of any employer" from willfully and intentionally paying an employee "a lower wage than

1  the wage such employer is obligated to pay such employee by any statute, ordinance, or contract[.]"
2  Wash. Rev. Code § 49.52.050(2). An employer or officer who violates this law is liable for twice
3  the withheld amount "together with costs of suit and a reasonable sum for attorney's fees" unless
4  the employee "has knowingly submitted to such violations." *Id.* § 49.52.070.

5        2.2.     The wrongful withholding statute "must be liberally construed to advance the
6  Legislature's intent to protect employee wages and assure payment." *Schilling v. Radio Holdings,*
7  *Inc.*, 961 P.2d 371, 375 (Wash. 1998).

8        2.3.     Section 49.46.010(4) of the Revised Code of Washington defines an "employer" as
9  "any individual, partnership, association, corporation, business trust, or any person or group of
10 persons acting directly or indirectly in the interest of an employer in relation to an employee." Dr.
11 Wise was an "employer" within the meaning of the Act because he was an individual acting
12 directly or indirectly in the interest of an employer (German Wise Dental, LLC) in relation to an
13 employee (Mr. Covington).

14       2.4.     In addition, or in the alternative, Dr. Wise was acting as the business's "vice-
15 principal" or "agent" within the meaning of the Act. Dr. Wise had "the authority to manage the
16 employer's business and/or supervise and direct other employees," and was authorized to make
17 decisions regarding wages. *Ellerman v. Centerpoint Prepress, Inc.*, 22 P.3d 795, 799 (Wash. 2001)
18 (en banc) (a "vice principal" is someone who "exercise[s] control over the direct payment of the
19 funds and act[s] pursuant to that authority," while an "agent" is someone who has "some power
20 and authority to make decisions regarding wages or the payment of wages"); *see also Kalmanovitz*
21 *v. Standen*, No. C14-1224-RSL, 2015 WL 9273611, at *3 (W.D. Wash. Dec. 21, 2015); *Durand*
22 *v. HIMC Corp.*, 214 P.3d 189, 199 (Wash. Ct. App. 2009).

23       2.5.     Mr. Covington was an employee of Dr. Wise within the meaning of the Act. Wash.
24 Rev. Code § 49.46.010(3).

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 8

2.6. Although the statute does not define "wage," the Washington Supreme Court has cited with approval the definition from a related wage statute, the Minimum Wage Act, chapter 49.46, which broadly defines "wage" as "compensation due to an employee by reason of employment[.]" *LaCoursiere v. CamWest Dev., Inc.*, 339 P.3d 963, 967 (Wash. 2014) ("*LaCoursiere II*") (quoting Wash. Rev. Code § 49.46.010(7)).

**3.   Mr. Covington's $1,500 Bonuses Were Not "Wages" Within the Meaning of the Statute**

3.1. In evaluating employment contracts, the Court's primary purpose is to determine the parties' intent. *Oliver v. Alcoa, Inc.*, No. C16-0741-JLR, 2016 WL 4734310, at *9 (W.D. Wash. Sept. 12, 2016). Washington follows the "objective manifestation theory" of contract interpretation, "focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). "An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used." *Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 271 P.3d 850, 856 (Wash. 2012).

3.2. Mr. Covington's employment contract stated that he "w[ould] be issued a $1500.00 bonus in addition to the . . . agreed upon salary monthly to be paid in conjunction with the beginning of each month's paycheck starting 30 days after beginning employment date of August 5th, 2019," and such bonus "w[ould] be structured as a merit for" various criteria, such as "employee retention, maintaining budgets, getting associate doctors," and "building relationships in the community." Ex. 6 at 4. The latter part of the bonus provisions would be rendered meaningless if the bonus were guaranteed regardless of whether Mr. Covington achieved any of the listed criteria. In other words, the latter portion has effect only if read to mean that the bonus

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9

is contingent on satisfaction of the listed criteria. *See* Tr. 23–24, 71–72, 74; Dkt. No. 119 at 2; Dkt. No. 120 at 6; *Oliver*, 2016 WL 4734310, at *5; *Snohomish Cnty. Pub. Transp. Benefit Area Corp.*, 271 P.3d at 856; *Koller v. Flerchinger*, 441 P.2d 126, 128 (Wash. 1968); *Ross v. Harding*, 391 P.2d 526, 531 (Wash. 1964).

3.3. However, "a real promise must exist" before a promise to pay a bonus can be enforced, and here, the listed criteria is "so indefinite" that the promise "cannot be enforced." *Goodpaster v. Pfizer, Inc.*, 665 P.2d 414, 416 (Wash. Ct. App. 1983); *see also Spooner v. Rsrv. Life Ins. Co.*, 287 P.2d 735, 738 (Wash. 1955). In addition, the subjective and indeterminate nature of the criteria—e.g., "positive improvements to the clinic" and "building relationships in the community," Ex. 6 at 4—makes it clear that payment of the bonus is "entirely discretionary by the promisor," *Goodpaster*, 665 P.2d at 416. Determining whether the vague performance standards were met was entirely within Dr. Wise's discretion. Thus, "[i]f [Mr. Covington] was induced to work harder as a result of the promise to pay a bonus, he did so 'relying on the corporate conscience' and not upon an enforceable contract." *Id.*; *see also Coulombe v. Total Renal Care Holdings, Inc.*, No. C06-504JLR, 2007 WL 1367601, at *7 (W.D. Wash. May 4, 2007) ("An employer has no obligation to pay a discretionary bonus absent the existence of a 'real promise' to pay additional compensation.").

**4. The $1,000 Bonus Does Constitute "Wages" Within the Meaning of the Statute**

4.1. That is not to say that a promise to pay a discretionary bonus is never enforceable. Although discretionary bonuses are generally considered gratuities and not wages, *Byrne v. Courtesy Ford, Inc.*, 32 P.3d 307, 311–12 (Wash. Ct. App. 2001), a discretionary bonus may be considered a wage within the meaning of the Act if it is "not purely gratuitous," but is instead "given regularly so as to create an expectation that it will continue," *LaCoursiere v. CamWest Dev., Inc.*, 289 P.3d 683, 688 (Wash. Ct. App. 2012) ("*LaCoursiere I*"), or is "earned for work

performed," *LaCoursiere II*, 339 P.3d at 968. *See also, e.g.*, *Byrne*, 32 P.3d at 312 (holding that television unexpectedly won in raffle by company and given to employee was not a wage because there was not sufficient testimony that television was given as compensation for work); *Simon v. Riblet Tramway Co.*, 505 P.2d 1291, 1293 (Wash. Ct. App. 1973) (holding that paying employee a bonus regularly for 10 years establishes an implied agreement to pay the bonus as part of employee's earned compensation); *Powell v. Republic Creosoting Co.*, 19 P.2d 919, 920–21 (Wash. 1933) (holding that a substantial bonus paid for 11 consecutive years is sufficient to hold that future bonus money was necessarily due as compensation).

    4.2.    Here, the discretionary $1,500 bonuses did not reach the stage of a "real promise." They were not given regularly—indeed, they were not given at all—nor did Dr. Wise determine that the $1,500 bonuses were earned.

    4.3.    However, Dr. Wise did offer to pay Mr. Covington a $1,000 bonus for September 2019, and Mr. Covington accepted that offer. Ex. 534. Indeed, Dr. Wise emphasized this in his post-trial brief. Dkt. No. 118 at 2 ("Mr. Covington accepted in text the [$1,000] bonus I suggested for that particular month[.]"); *see also* Dkt. No. 105 at 5 ("As shown in the text messages, one month prof. Wise told Mr. Covington that the production was good and he instructed him to take $1000 bonus for that month[.]"). That offer—and Mr. Covington's acceptance thereof—created a "real promise" to pay the $1,000. *LaCoursiere II*, 339 P.3d at 967 ("While CamWest maintained the discretion to give the bonus in the first place, once CamWest paid LaCoursiere the bonus based on his work performance, that bonus became a wage that LaCoursiere was 'entitled to receive from his employer, and which the employer is obligated to pay.'" (quoting *State v. Carter*, 142 P.2d 403, 407 (Wash. 1943)); *Labriola v. Pollard Grp., Inc.*, 100 P.3d 791, 834 (Wash. 2004) (en banc) ("[i]ndependent consideration" to support a post-employment contract "may include increased wages, a promotion, *a bonus*, a fixed term of employment, or perhaps access to protected

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11

information" (emphasis added)); *Gaglidari v. Denny's Rests., Inc.*, 815 P.2d 1362, 1367–68 (Wash. 1991).

4.4. Because the $1,000 bonus promised by Dr. Wise was compensation due to Mr. Covington by reason of employment, it constituted wages under Section 49.46.010(7). *LaCoursiere II*, 339 P.3d at 967–68 (Wash. 2014); *Flower v. T.R.A. Indus., Inc.*, 111 P.3d 1192, 1203 (Wash. Ct. App. 2005) (signing bonus was to be paid "by reason of employment" and "was therefore wages.").

**5. Dr. Wise Willfully and Intentionally Failed to Pay Mr. Covington the $1,000 Bonus**

5.1. Dr. Wise violated Section 49.52.050 of the Revised Code of Washington by willfully and intentionally failing to pay Mr. Covington the $1,000 bonus he was obligated to pay Mr. Covington by statute and contract.

5.2. A "willful" failure to pay is volitional, meaning that the person who failed to pay "knows what he is doing, intends to do what he is doing, and is a free agent." *Schilling*, 961 P.2d at 375 (quoting *Brandt v. Impero*, 463 P.2d 197, 199 (Wash. Ct. App. 1969)); *see also Lillig v. Becton-Dickinson*, 717 P.2d 1371, 1375 (Wash. 1986) ("The nonpayment of wages is willful when it is the result of a knowing and intentional action and not the result of a bona fide dispute."). In contrast, a failure to pay is not willful (1) if the failure is the result of carelessness or error or (2) when a bona fide dispute exists as to the amount of wages owed or whether there was an employer/employee relationship. *Waters v. Mitchell*, No. C21-0087JLR, 2023 WL 3304217, at *7 (W.D. Wash. May 8, 2023); *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1112 (9th Cir. 2022) (an employer's genuine belief that it was not obligated to pay wages precludes a finding of willfulness). Washington does not recognize a defense based on financial inability to pay. *Schilling*, 961 P.2d at 377–78.

5.3. Dr. Wise willfully and intentionally failed to pay Mr. Covington the $1,000 bonus. This failure was not the result of carelessness or inadvertence. *Id.* at 375–76. During the trial, Dr. Wise did not contend that he had inadvertently failed to pay; instead, he highlighted the agreed $1,000 bonus as evidence that there was no agreement to pay any other bonuses. *See, e.g.*, Tr. 105 ("Does that tell you that this is the bonus that we have? I mean, there's no other bonuses that were not?"); *see also* Dkt. No. 118 at 2 ("Mr. Covington accepted in text the [$1,000] bonus [he] suggested for that particular month that indicated there was no other bonuses ever agreed on."); Dkt. No. 105 at 5 ("Mr. Covington replied that was nice that means he knew he was never promised any further bonuses.").

5.4. There is no bona fide dispute that the $1,000 bonus was owed because Dr. Wise offered to pay it in writing, Ex. 534, and admits that Mr. Covington "accepted" that offer, Dkt. No. 118 at 1.

5.5. Mr. Covington did not knowingly submit to nonpayment of the $1,000 bonus. Wash. Rev. Code § 49.52.070. To "knowingly submit" to the unlawful withholding of wages, "the employee must have deliberately and intentionally deferred to the employer the decision of whether they would ever be paid." *Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc.*, 431 P.3d 1018, 1033 (Wash. Ct. App. 2018) (cleaned up). Merely staying on the job after an employer fails to pay wages is not "knowing submission" to an unlawful withholding of wages. *See Chelius v. Questar Microsystems*, Inc., 27 P.3d 681, 683 (Wash. Ct. App. 2001). Mr. Covington credibly testified that he repeatedly asked Dr. Wise about the unpaid bonuses, and he filed suit to recover them. Dkt. No. 1; Tr. 47–48; *Peiffer*, 431 P.3d at 1033 ("As a matter of law, the trial court's unchallenged findings that [plaintiff] made clear and continuing objections to the withholding support the conclusion . . . that he did not knowingly submit to the withholding.").

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 13

5.6. Because Dr. Wise willfully and intentionally deprived Mr. Covington of the $1,000 bonus that Dr. Wise was obligated to pay, Mr. Covington is entitled to recover $2,000—"twice the amount of the wages unlawfully rebated or withheld." Wash. Rev. Code §§ 49.52.050(2), -.070.

5.7. Mr. Covington is also entitled to recover his reasonable costs and attorney's fees. *Id.* § 49.52.070.

## IV. CONCLUSION

The Court awards Mr. Covington $2,000 under Section 49.52.070 of the Revised Code of Washington.

Mr. Covington may file a motion within 14 days of the date of this Order for reasonable attorney's fees. He shall note the motion in accordance with Local Civil Rule 7(d) so that Dr. Wise has the opportunity to file a timely response. *See* LCR 7(b)(2). Any motion for attorney's fees must include appropriate evidentiary support and address whether full fees are appropriate in light of Mr. Covington's partial success at trial. With respect to any legal work that had to be redone due to mistake and/or court order, the Court cautions Mr. Covington that "time spent correcting mistakes is not compensable." *Abrams v. Sequium Asset Sols., LLC*, No. 21-CV-05374-LK, 2023 WL 2757195, at *15 (W.D. Wash. Mar. 31, 2023); *see also Stephens v. Marino, White, O'Farrell & Gonzalez*, No. C10-5820-BHS, 2011 WL 4747920, at *4 (W.D. Wash. Oct. 7, 2011).

The Court will enter judgment following the earlier of (1) its determination of the amount of Mr. Covington's reasonable attorney's fees or (2) Mr. Covington's failure to timely file a motion for attorney's fees.

Dated this 25th day of March, 2024.

*Lauren King*
Lauren King
United States District Judge